The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is 55 years old. He has a limited education, having completed only nine years of school. He has had no additional education beyond the ninth grade and does not have a GED.
2. Prior to his employment with the Defendant-Employer, Plaintiff's previous work history has been other jobs requiring manual labor, i.e., textile work, cleaning houses, loading and unloading freight, and carpentry work.
3. At the time of his injury on September 7, 1994, he had been working for the Defendant since July of 1993 in maintenance. His duties were varied and included maintaining apartments and grounds for his employer. Some of his specific duties were: repairing bathrooms, working on furnaces, repairing roofing, repairing floor systems, mowing the grounds, etc. At this job he was required to lift up to 100 lb. infrequently and up to 50 lb. fifteen to twenty times a week. He was required to be on his feet continuously and to bend, stoop, climb, and crawl frequently.
4. On September 7, 1994, Plaintiff was injured when he was straddling a ditch and stepped on a ball of clay and fell into a sewer manhole. He injured his left leg and back.
5. On September 7, 1994, Plaintiff told his supervisor he had been injured and showed him his leg. The injury happened on a Friday. Plaintiff did not go to the doctor until September 12, 1994, when his pain persisted. His employer completed a Form 19, dated September 20, 1994, which states they became informed of this incident on September 13, 1994, and that Plaintiff disability began on September 12, 1994. Prior to this injury, Plaintiff had not had any significant problems or injuries to his back. Plaintiff was seen by Dr. Hay and his diagnosis was mild lumbar sprain and sciatic neuralgia neuritis, radiculitis. Dr. Hay referred Plaintiff to Dr. Raymond Sweet, a neurosurgeon. Dr. Sweet examined Plaintiff on November 1, 1994, and ordered an MRI, which showed a small disc herniation at T5-6 and a disc bulge at T4-5. Thereafter Plaintiff was treated by Dr. Todd Chapman at the Miller Orthopaedic Clinic, Pro Active Therapy, and by Dr. Beth Tarkington, his family physician. A second opinion was rendered on September 13, 1995, for Plaintiff by Dr. Avioli at Orthopaedic Specialists of Gastonia. Despite the medical treatment he has received, Plaintiff has continued to experience pain and discomfort.
6. On June 15, 1995, Plaintiff returned to work for his employer. Dr. Chapman had returned him to work "light duty." His employer gave him employment painting apartments and paid him $5.50 an hour for this work. At first the apartments he was painting were empty and he got along fairly well performing this work. Sometime in July or August of 1995, he was asked to paint occupied apartments and in moving the furniture about he experienced increased pain in his back.
7. Dr. Chapman's office note on July 10, 1995, states "He returns and he's getting back to light duty and doing relatively well. He has cleaned and painted three apartments he tells me. Does have a lot of low back soreness." He also stated, "I think he had reached maximum medical improvement and he has a three percent (3%) permanent partial impairment of his spine due to his fall and the chronic pain which he has."
8. On August 25, 1995, Plaintiff returned to Dr. Chapman and was still having sharp, intermittent pain in his back. Plaintiff requested that Dr. Chapman allow him to go back to his regular job. Dr. Chapman stated, "I think this will be fine." He gave him a note to that effect.
9. On September 26, 1995, Plaintiff returned to Dr. Chapman. He had still been doing the painting job and he told Dr. Chapman he was having increased low back pain due to moving furniture with the apartments. Dr. Chapman noted, "I think he has failed his return to work trial."
10. Dr. Chapman saw Plaintiff again on October 10, 1995, and noted he was having continued pain in his back and down both legs. He continued to keep Plaintiff out of work. On March 6, 1996, Dr. Chapman completed a questionnaire stating that in his opinion the Plaintiff was not able to return to his regular job doing maintenance. Dr. Chapman restricted Plaintiff to no standing for more than 30 minutes; no sitting for more than 30 minutes; no lifting over 15 pounds; and no repetitive bending or stooping. At that time, Dr. Chapman concluded that Plaintiff had reached maximum medical improvement and had a 10% permanent partial impairment to the back. Finally, Dr. Chapman noted that Plaintiff may need additional treatment as a result of this injury at work, to include office visits, medication, and physical therapy.
11. On May 2, 1996, Plaintiff was seen by Dr. Chapman again. He described an incident where he had been planting tomato plants and experienced an exacerbation of his back pain with pain tingling down to his knee. Dr. Chapman stated, "He continues to be not working secondary to his disability."
12. Dr. Chapman saw Plaintiff again on May 17, 1996, and on July 1, 1996. On the later date, Dr. Chapman noted "the more active he is, the worse he hurts." He recommended Plaintiff start volunteering a couple of hours a day and that hopefully he would be able to find something he is able to do. When Dr. Chapman last saw Plaintiff on August 30, 1996, he was continuing to have low back pain and "a lot of spasm in his back." Dr. Chapman was to see him again in three months.
13. Dr. Chapman's deposition was taken September 16, 1996. In this deposition, Dr. Chapman stated "Mr. Kitchin said he had a ninth grade education. I think that his understanding, his perception, his ability to follow instructions is somewhat limited in that he's always done quite physical manual labor." Dr. Chapman has continued to keep Mr. Kitchin out of work since September 26, 1996 when he stated he had failed his return to work. Dr. Chapman further stated that the restrictions he set out in the March 6, 1996 questionnaire would remain in place for Mr. Kitchin and that these restrictions will be permanent for him. He specifies he may lift not over 15 pounds on an infrequent basis. He could lift 5 pounds on a frequent basis. Finally, Dr. Chapman Stated, "I'm not sure that all his complaints of pain go to his September, `94, fall in the manhole. I think he, you know, stirred the pot if you will but now once he's stirred it it's kind of an ongoing learn to live with your new aches and pains — ".
14. Plaintiff has been unable to work since September 26, 1995, when Dr. Chapman stated he had failed his return to work. Considering his age, education, and prior work experience, Plaintiff is still disabled as a result of his injury at work on September 7, 1994, and is entitled to continuing workers' compensation benefits.
**********
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Since Plaintiff suffered an injury by accident on September 7, 1994, he is entitled to benefits under the North Carolina Workers' Compensation Act. G.S. § 97-2(6).
2. Defendants shall pay all medical expenses incurred by Plaintiff as a result of this injury by accident. G.S. § 97-25.
3. Since Plaintiff was returned to light duty at $5.50 per hour from August 9, 1995 through August 28, 1995, he is entitled to two thirds of the difference between his pre-injury wage and his post-injury wage for this period of time. G.S. § 97-30.
4. Since Plaintiff is unable to effectively returned to work, he is entitled to temporary total disability benefits at the compensation rate of $302.13 per week from September 26, 1995, through present and continuing until further order of the commission. G.S. § 97-29.
**********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to Plaintiff temporary partial disability benefits at the rate of $54.78 from August 9, 1995 through August 28, 1995. This compensation has accrued and shall be paid to Plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay temporary total disability benefits to Plaintiff at the rate of $302.13 per week from September 26, 1995 to present and continuing until further Order of the Commission. That compensation which has accrued shall be paid to Plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by Plaintiff as a result to this injury by accident.
4. An attorney's fee in the amount of 25% of the award which has accrued shall be paid directly to Plaintiff counsel. In addition, every fourth check due Plaintiff in the future shall be sent deducted and directly to Plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
6. An expert witness fee in the amount of $350.00 is hereby approved for Dr. Todd M. Chapman.
 S/ ________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER
GTG/db